## MISSOURI, K. & T. RY. CO. v. SMITH.

No. 12414—Opinion Filed Feb. 5, 1924.

**1. Carriers—Negligence—Personal Injury—Doctrine of Last Clear Chance.**

Plaintiff's negligence does not excuse defendant from duty of exercising reasonable care after discovery of peril. The doctrine of last clear chance applies usually in cases where the plaintiff or his property is in some danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot, and the defendant can, prevent the injury. Defendant is charged with the duty of using ordinary care to prevent injury or accident in such cases when defendant sees plaintiff's peril. It is defendant's duty to act with reasonable care after thus seeing the other, to avoid the injury, and defendant cannot insist upon the other's negligence as a protection when after defendant has discovered the other's situation, it does not exercise reasonable care to prevent the accident.

Held, that under the facts in the instant case it was proper to submit to the jury the question as to whether plaintiff in error, after discovering the dangerous situation of the defendant in error, exercised reasonable care and prudence to avoid the injury.

Instructions examined, and held, that the instructions as a whole properly state the doctrine of last clear chance, and do not impose upon the defendant a greater burden than that of using ordinary care to avoid injuring plaintiff after the discovery of his peril.

**2. Negligence—Personal Injuries—Contributory Negligence.**

Contributory negligence is the negligence of the person on account of whose injury the action was brought, amounting to a want of ordinary care, when combined with a proximate connection between this want of care and the injury complained of.

Held, that an instruction which states the substance of contributory negligence in apt terms in accordance with the foregoing definition is sufficient, although the instruction does not contain the specific term "contributory negligence."

**3. Appeal and Error—Discretion of Court—Admission of Imperfect Diagrams in Evidence.**

To render admissible in evidence a cut, model or diagram, preliminary evidence

should be given of the correctness of the representation, and when such cut or diagram is admitted in evidence, not as an exact representation o fthis interior of the cab of defendant's engine, and where further evidence discloses the difference between such representation and defendant's cab, and defendant is given a full opportunity to explain such cut, held, that the decision of the trial court on the question of the admissibility of such cut will not be reviewed unless there is a manifest abuse of discretion. Held, further, that no such clear or manifest abuse of discretion appears in the ruling of the trial court on the admissibility of such cut or diagram.

**4.  Damages—Personal Injuries — Excessive Recovery.**

When an elderly man, 51 years of age, is injured by the negligence of defendant, and such injuries are permanent and serious, involving in effect the destruction of an arm, the breaking of an ear-drum, and impairment of hearing, the verdict in the sum of $16,500 is not excessive.

Record examined and held, that plaintiff's injuries were serious, painful and permanent, and greatly impaired his earning capacity.

Held, further, that a verdict of $16,500 was not excessive.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by W. L. Smith against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

Snyder, Owen & Lybrand, for defendant in error.

Opinion by LYONS, C.   W. L. Smith, hereinafter called the plaintiff, sued Missouri, Kansas & Texas Railway Company, hereinafter called the defendant, to recover $16,500 for personal injuries received by him while an intending passenger standing on the defendant's depot platform in Cleveland, Okla.

The evidence tends to show that Smith had purchased a ticket and was waiting for a passenger train upon which he intended to embark. It appears that the engine on the incoming passenger train struck another man standing near Smith on the edge of the depot platform, the plaintiff being in turn struck by the other man and afterwards falling, and then being himself struck by the engine of the train, breaking his arm, dislo-

cating his elbow, breaking his ear-drum, and impairing his hearing.

The plaintiff in error contends that there is not sufficient evidence to make out a case of primary negligence, but with this we are unable to agree. The evidence is conflicting as to whether the required signals were given by ringing the bell and sounding the whistle, and since the jury has the function of trying the facts, we are not at liberty to disturb the verdict on the contention made in this respect, although the testimony as to the giving of proper signals may not be wholly satisfactory to the court. The trial court sits as the thirteenth juror on hearing the motion for a new trial, and since the trial court was satisfied that the evidence on the question of primary negligence was sufficient, we are not at liberty to disturb the verdict on the ground urged.

It appears also that at the time the passenger train was approaching the station, defendants' servants were switching a freight train, coupling and uncoupling the same; that the switch engine's bell was ringing constantly, and that its whistle was sounded a number of times, and that the freight train was so situated on the tracks as to interfere with the view of the incoming passenger train. These circumstances, of course, were properly considered by the jury, and we think, in view of the entire evidence, were sufficient to make out a case of primary negligence. The defendant has alleged a number of errors here, but we think it material to notice at length only three, which are vigorously urged, and which are relied on for a reversal of this cause:

(a) That the court committed reversible error in instruction No. 9 in submitting the doctrine of last clear chance.

(b) That the court erred in permitting a witness to use a drawing or plat in giving testimony, and in permitting said drawing to be introduced in evidence.

(c) That the plaintiff cannot recover under the last clear chance doctrine for the reason that the negligence of the plaintiff was continuing, and continued contributory negligence precludes recovery.

We shall discuss these alleged errors in the order above stated.

Instruction No. 9 given by the court, is as follows:

"You are instructed that if you should find and believe from the evidence that the engineer of the train which is alleged to have caused the accident to plaintiff caused the whistle of the engine to be sounded at the

usual place, upon approaching the station, and that the bell of the engine was ringing as it came into the station, and that the fireman as soon as he realized the fact that people on the platform were possibly in a dangerous position, yelled to the persons standing on the platform a warning to 'look out' and you should find that the engineer and fireman of the train in so doing, exercised that degree of care which ordinarily prudent men under the circumstances would have exercised to prevent an accident, and that as ordinarily prudent men they did not omit to do anything to prevent the injury complained of by plaintiff, then you are instructed your verdict should be for defendant."

In instruction No. 8 the jury are told:

"You are instructed that if you shall find that the defendant was negligent, but that the plaintiff at the time he was injured, was standing near the edge of the station platform, he did not exercise that care and prudence which an ordinarily careful and prudent man would have exercised under the same circumstances; and that such want of care, if you shall so find, proximately contributed to the plaintiff's injury; then you are instructed that your verdict must be for the defendant. In this connection you are further instructed that while it is ordinarily true that plaintiff could not recover if it is shown by a preponderance of the evidence that he himself was guilty of negligence at the time of his injury which was a present, contributing, proximate cause thereof, yet, notwithstanding this general rule, if the defendant's servants in charge of its train at the time of the accident, saw the plaintiff in a position if peril, it then became their duty upon discovering such condition of peril, to use ordinary care to avoid injuring him, and this notwithstanding you, may believe from a preponderance of the evidence that plaintiff has been guilty of contributory negligence; and in this connection you are further instructed that if you find and believe from the evidence that the servants of the defendant company in charge of its train, saw that the plaintiff or the said Kirk, was in a position of peril, in time to avoid injuring the said Kirk, or the said plaintiff, by the exercise of ordinary care by means reasonably within their control, and that they failed so to do, then you are instructed that the plaintiff would be entitled to recover, and your verdict will be for the plaintiff, but in his connection you are further instructed that if defendant's servants after discovering the plaintiff's position of peril, if you find such to be the fact, then used ordinary care to prevent his injury, the use of such ordinary care under such circumstances as outlined, would fulfill its duty under the law; and if you find that they did so, from the evidence in the case, then under such circumstances the plaintiff would not

be entitled to recover, and your verdict will be for the defendant."

It is the contention of the defendant that this part of the sentence in instruction No. 9, to wit, "and you should find that the engineer and fireman of the train in so doing exercised that degree of care which ordinarily prudent men under the same circumstances would have exercised to prevent an accident, and that as ordinarily prudent persons they did not omit to do anything to prevent the injury complained of by plaintiff, then you are instructed your verdict should be for the defendant," constituted reversible error as imposing a greater burden on the defendant than the use of ordinary care. If this sentence stood alone, without the context and without instruction No. 8, we would be disposed to give serious consideration to the contention. However, instruction No. 8 states the law fully, fairly, and completely, in a perfect manner and tells the jury beyond the possibility of misunderstanding that the degree of care the defendant is to use is ordinary or reasonable care to avoid injuring plaintiff after the discovery of his peril.

The jury found under the evidence that defendant did not use ordinary care, and therefore the plaintiff would be entitled to recover.

We think that under the complete statement of the law the jury could not have been misled, and that the jury understood from both instructions that it was the duty of defendant's servants to use ordinary care to avoid injuring plaintiff after discovering his peril. The doctrine of last clear chance has been discussed and decided many times by this court. A simple statement of the doctrine is made in Muskogee Electric Company v. Tanner, 93 Okla. 284, 220 Pac. 655, in which the authorities are discussed. The statement in that case is as follows:

"The doctrine of last clear chance applies usually in cases where the plaintiff or his property is in some danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot and the defendant can, prevent the injury. Defendant is charged with the duty of using ordinary care to prevent injury or accident in such case."

Upon a consideration of the instructions as a whole in the instant case, we are convinced that the jury could not have been misled. It is clear that even when instruction No. 9 is taken alone, without giving consideration to No. 8, the plain intent of the language is that the defendant's ser-

vants are required to use the degree of care which an ordinarily prudent man under the same circumstances would exercise to prevent an accident, and were required not to omit to do what an ordinary prudent man would have done in the situation.

The language of the instruction is labored and inept, but this does not constitute reversible error. We find, therefore, that the doctrine of last clear chance was properly submitted to the jury.

The defendant's second contention is that the court committed reversible error in permitting a witness to testify from a plat or diagram. Plaintiff's witness G. W. Sharp in testifying used a newspaper cut of a locomotive engine cab with an engineer therein represented in the act of manipulating the machinery, and appliances. The cut or diagram from which the witness testified was offered in evidence as a fair representation or diagram of an engine cab. Counsel for plaintiff stated, "all we want of it (the cut or diagram) is to show how the appliances are operated, how they are managed, and how they are manipulated by the engineer," and the witness says that "it is a fair representation of the interior of a cab." On this statement the court overruled the objection to the introduction of the diagram in evidence and permitted the giving of testimony explaining the cut, and also permitted the introduction of evidence which disclosed that this cut was not an accurate representation of the interior of the cab of the engine which caused the accident. Defendant claims that the introduction of this cut or diagram was reversible error, and cites the rule announced in Jones' Commentaries on Evidence, vol. 3, page 51, as follows:

"It is clearly necessary in order to render diagrams, models, photographs, and the like, admissible in evidence, that preliminary evidence would be given of the correctness of the representation; and when such evidence is introduced this is a preliminary question for the determination of the trial judge * * * and his decision upon this question will not be reviewed by the appellate court."

The showing made as to the cut or diagram was sufficient to justify the trial court in permitting it to go to the jury for what it was worth. It appears further in the evidence that the defendant's engineer testified with reference to this cut, explaining to the jury wherein the appliances of the engine used by him differed from those represented in the cut. The defendant had every opportunity to correct any misapprehension which might have been caused by the use of the cut or diagram in evidence. The cut did not purport to be a photograph or exact representation of the interior of the cab of defendant's engine, and therefore the rule announced in Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 Pac. 747, relative to photographs is not applicable. We think the question on this contention is whether the trial court abused its discretion in permitting the cut or diagram to be offered in evidence under the preliminary showing made, and from our examination of the record we are unable to see that any clear or manifest abuse of discretion is disclosed. Therefore, under the rule announced by Jones on Evidence, the contention made relative to the introduction of the cut or diagram cannot be adjudged to be reversible error by this court.

We now pass to the discussion of the most important question in the case. It is the contention of the defendant, forcibly asserted and plausibly maintained, that the plaintiff cannot recover for the reason that the negligence of the plaintiff was continuing, and that his continued contributory negligence precludes recovery. It is said in substance by the defendant that the plaintiff recklessly exposed himself to the danger of an injury from the incoming train by standing in a position of danger near the edge of the platform; that he was guilty of contributory negligence in the first instance by placing himself in such position; that his negligence continued up to the moment of the injury, and was the proximate cause thereof, and that even under the doctrine of last clear chance he could not recover for the reason that his contributory negligence, which was the proximate cause of injury, never ceased; and that therefore the doctrine of last clear chance, strictly speaking, was never applicable under the testimony in this case. The theory of the defendant is well stated in a case note which appears in 7 L. R. A. (N. S.) 132, Dyerson v. Union Pacific R. Co. (Kans. 1906) 87 Pac. 680, which was the case of an employe being struck by a train under circumstances which defendant claims are similar to this case. The case note is as follows:

"Case Note—Doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendant was concurrent. The point upon which the decision in the above case turns, namely, that the negligence of the plaintiff continued up to the very moment he was hurt, and was therefore contemporaneous and concurrent with the negligence of defendant, has been too often disregarded by the courts in applying the doctrine of last clear chance in cases where the negligence charged against the defendant consisted of some act or omis-

sion occurring before the discovery of the peril in which the plaintiff or deceased had placed himself or his property, by his own negligence. As shown in a note in 55 L. R. A. 418, the function of the doctrine of last clear chance is not to permit a recovery in spite of contributory negligence, but merely to relieve the antecedent negligence of the plaintiff or deceased, which would otherwise be regarded as contributory, of its character as such; and this result, it accomplishes by characterizing the negligence of the defendant, if it intervenes or continues between the negligence of the plaintiff or the deceased and the accident, as the sole proximate cause of the injury, and the plaintiff or deceased's antecedent negligence merely as a condition or remote cause. In other words, as is succinctly stated in Smith v. Norfolk & S. R. Co., 114 N. C. 728, 25 L. R. A. 287, 19 S. E. 863, 923, the doctrine simply furnishes a means of determining whether the plaintiff's negligence is a remote or proximate cause of the injury. It is apparent therefore, that, in order to make the doctrine operative,—at least in order to make it operative, so as to sustain a recovery against the defendant when the negligence charged against the latter consists of an act or omission occurring before the discovery of the danger,—the defendant's negligence must have intervened or continued after the negligence on the part of the plaintiff or deceased had terminated. If the negligence of the plaintiff or deceased concurred with that of the defendant up to the very instant of the accident, or if it continued at least as long as the defendant's negligence, the doctrine cannot be properly applied against the defendant."

The defendant also invokes the rule laid down in Denver City Tramway Company v. Cobb (C. C. A. 8th Cir. 1908) 164 Fed. 41, where the court said:

"It is also urged that the case is within that exception to the general rule making contributory negligence a defense, which is known as the 'last clear chance doctrine.' But there are two reasons why that is not so; first, the exception does not apply where there is no negligence of the defendant supervening subsequently to that of the plaintiff, as where his negligence is continuous and operative down to the moment of the injury. St. Louis & San Francisco Ry. Co. v. Schumacher, 152 U. S. 77, 81, 14 Sup. Co. 479, 38 L. Ed. 361; Illniois Central R. Co. v. Ackerman, 76 C. C. A. 13, 144 Fed. 959; Missouri Pac. Ry. Co. v. Mosley, 6 C. C. A. 641, 57 Fed 921; Gilbert v. Erie R. Co. 38 C. C. A. 408, 97 Fed. 747. Second, the exception does not apply where plaintiff's negligence or position of danger is not discovered by the defendant in time to avoid the injury."

The defendant's argument and statement of its contention is clear and concise, and we quote from counsel's brief as follows:

"It is almost inconceivable that the plaintiff and his companion Kirk should have in the first instance, deliberately taken a position so near the edge of the platform when they knew the train was due, and it is harder to conceive of their remaining there in that dangerous position, oblivous to the approach of the passenger train, which others heard and saw approaching, and deaf to the warnings, even the halloo of the fireman whom he saw and realized they did not seem to observe the train approaching. As is stated in the foregoing authorities, the engineer and also the fireman, under the circumstances, had the right to presume that all persons on the platform were in possession of their normal faculties and could see or hear the train and remove themselves to a place of safety. They did all they could do after it was brought home to them that plaintiff and his companion would not move back, but as before stated, if it be conceded, for the sake of argument, that they were negligent in some degree, then under the foregoing authorities the court erred in submitting the case to the jury under instruction No. 8, permitting the plaintiff to recover under the last clear chance doctrine, as his negligence was concurring up to the moment of the accident or continued beyond and after the time it was possible for the engineer to have done anything whatever to have avoided the accident, and had the plaintiff exercised any care whatever, they could have discovered the fact that the train was approaching, and one step backward would have removed him from a place of danger, and this step he could have taken at any time before he was struck."

However we may admire the earnestness and plausibility of counsel's argument, we are unable to concede, after a full examination of the record, that either the argument or the rule invoked can apply to the facts in this controversy.

It must be borne in mind, in the first place, that the plaintiff in this case, who sustained such serious injuries, was standing a sufficient distance from the edge of the platform to avoid injury. He was injured because the defendant's locomotive struck one Kirk, throwing Kirk against him, causing him (plaintiff) to be catapulted against the side of the tender of the engine. There is also testimony in the record to show that both the fireman and the engineer saw and realized that persons standing on the platform were in a place of peril. The fireman shouted "Look out!" and it appears that defendant's servants did nothing further to avoid injuring plaintiff. There is testimony to support the theory that defendant's servants should in the exercise of ordinary care have caused the whistle to be blown, and should have made an effort at least to stop

the train. There is testimony in the record that the train was proceeding slowly, was under control, and could have been stopped in time to avoid injuring plaintiff, whose serious position was apparent. Whether this was negligence under the doctrine of last clear chance was a question of fact for the jury which was submitted to the jury under appropriate instructions, and they resolved the facts against the defendant company.

If the law is as contended by the defendant, its agents and servants can at any and all times, regardless of the peril of intending passengers, drive their train into the station, injuring persons standing on the platform, although such persons stand a sufficient distance from the platform to avoid direct control, and would under ordinary conditions, be in a place of safety. To sustain this theory, it would be necessary to hold that there is a positive and unyielding presumption that persons on the platform under any and all circumstances, are bound to so conduct themselves that they will avoid receiving injuries, and that the defendant's servants in charge of an incoming train need exercise no care whatsoever for the safety of intending passengers.

We do not believe that any such latitude is given to the servants of the defendant, and we think that they may not disregard the peril of persons standing on the platform.

The burden placed on the defendant's servants in such cases is not a heavy one. They are required only to use ordinary care to avoid injuring the persons whom they have discovered to be in peril. In this case the jury, who were the triers of the facts, found that the defendant failed to use ordinary care, and a reading of the record confirms us in the view that the verdict is sustained by the evidence.

In the case of Atchison T. & S. F. Ry. Co. v. Baker, 21 Okla. 51, 95 Pac. 433, 16 L. R. A. (N. S.) 825, the court, after pointing out that there was a conflict in the evidence as to whether or not the defendant's engineer, after discovering the peril of the plaintiff, had used reasonable care to avoid the injury, announces the following statement of law:

"This being so, it is proper to submit to the jury the question as to whether plaintiff in error, after discovering the dangerous situation of the defendant in error, exercised reasonable care and prudence to avoid the injury."

The court in that case made the following further statement:

"We believe it was sufficient to send the case to the jury on the question of the exercise of reasonable care, on the part of the

plaintiff in error, after it discovered the dangerous situation of defendant in error."

The syllabus in that case announces the following rule:

"Although the rule is that, even if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident, yet the contributory negligence on his part will not exonerate the defendant and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence." A., T. & S. F. Ry. Co. v. Baker, supra.

See, also, Oklahoma Railway Co. v. Barkett 30 Okla. 28, 118 Pac. 350, where the court makes the following statement:

"If the defendant's negligence is the proximate cause of the injury, he is liable for damages. If the plaintiff's negligence and the defendant's negligence are equal, it cannot be said the defendant's negligence is the proximate cause, and therefore the plaintiff is not entitled to recover. If, however, one sees the other, it is of course his duty to act with reasonable care after thus seeing the other to avoid the injury, and he cannot insist upon the other's negligence, as a protection to him, if he, after discovering the other's situation, does not exercise reasonable care to prevent the accident."

We are compelled to the conclusion that under the conflicting evidence in this case the court properly submitted the doctrine of last clear chance to the jury, and we are convinced that under the testimony, the verdict of the jury is sustained by the evidence.

It remains now to comment upon two other contentions of the plaintiff in error.

(1) That the trial court did not define the defense of contributory negligence to the jury.

(2) That the defendant's engineer should have been permitted to testify that in 37 years' experience he had never had a similar accident.

Relative to proposition No. 1, it is sufficient to say that the following definition of contributory negligence appears in instruction No. 8:

"You are instructed that if you shall find that defendant was negligent, but that the plaintiff at the time he was injured, was standing near the edge of the platform, he did not exercise that care and prudence which an ordinarily careful and prudent man would have exercised under the same circumstances; and that such want of care, if you shall so find, proximately contributed

to plaintiff's injury, then you are instructed that your verdict must be for the defendant."

The foregoing is substantially an instruction requested by the defendant. Defendant's requested instruction No. 8 is as follows:

"You are instructed that if you shall find that the defendant was negligent. but that the plaintiff, at the time he was injured, was standing near the edge of the station platform, and that in so standing near the edge of the station platform, he did not exercise that care and prudence which an ordinarily careful and prudent man would have exercised under the same circumstances, and that such want of care, if you shall so find, proximately contributed to plaintiff's injury; then you are instructed that your verdict must be for the defendant."

It is plain, therefore, that the defendant cannot complain of the foregoing language of instruction No. 8, given by the court, since it is substantially the instruction requested by the defendant.

Instruction No. 5 given by the court, is as follows:

"You are instructed that by proximate cause is meant that direct, efficient and moving cause, which in the natural and continuous sequence, unbroken by any new cause, produces the injury, and without which the injury would not have happened, and from which a person of ordinary prudence and intelligence acquainted with all the facts could reasonably foresee the result."

This court has defined contributory negligence in a number of cases, and as good a definition as any appears in St. Louis & S. F. R. Co. v. Elsing, 37 Okla. 333, 132 Pac. 483:

"Contributory negligence is the negligence of the person on account of whose injury the action was brought, amounting to a want of ordinary care combined with a proximate connection between this want of care and the injury complained of."

When we test the instructions of the court by this rule, we find that the jury were told that if the plaintiff did not exercise ordinary care, and that if such want of ordinary care proximately contributed to plaintiff's injury, then their verdict must be for the defendant. This instruction was as favorable to defendant as is required by the authorities. The court might have gone further and said that such want of care on the part of the plaintiff would amount to contributory negligence which would preclude his recovery.

However, the instruction given by the court defined the defense of contributory negligence, and stated its substance and essence, although the term· contributory negligence is not used. We think that the constitutional provision requiring the submission of the defense of contributory negligence to the jury is complied with when the question is submitted to a jury stating the substance of contributory negligence, and leaving the fact to be found by the jury under the statement of law by the court. We conclude that no error can be predicated on this assignment.

With regard to the contention that the defendant's engineer should have been permitted to testify that within his experience of 37 years he had never had a similar accident, the record discloses the following:

"In your experience of 37 years did your engine ever strike anybody standing on a platform before?    Mr. Owen:  We object to that as incompetent, irrelevant, and immaterial: the fact that this man may have been careful and prudent on every occasion, is in no wise a matter of evidence as to whether he was prudent and careful on this particular occasion.  The Court:  Objection sustained."

Defendant contends that by this question it sought to elicit evidence of the engineer's experience as to the action of persons on station platforms, and that the question was propounded to prove a habit or custom on which defendant had a right to rely.  If this was the purpose of the question, its form was objectionable, as there was nothing in the question to indicate clearly that the purpose was to prove a habit or custom.  If the purpose of the defendant was to prove a habit or custom, questions could have been asked and an offer of proof could have been made which would have left no doubt on the subject.

The record presented on this point does not justify us in holding that the trial court committed reversible error in sustaining an objection to the queston.

It is also contended by the defendant that the court erred in refusing to give an instruction asked by defendant as to the probative value of negative and positive testimony.  Such an instruction might well have been given, but in view of all of the facts and circumstances in the case, and inasmuch as it appears, without contradiction, that the plaintiff was standing a sufficient distance from the edge of the platform to avoid injury in the event Kirk had not been struck first by the engine, and since the verdict may properly be sustained under the doctrine of last clear chance, we cannot see that the refusal to give this instruction· is ·reversible error.

This case as a whole is not free from difficulty, but it plainly appears that the plaintiff was standing in a place where he had a right to be as an intending passenger; that he was seriously and painfully injured by defendant's engine; that there is evidence disclosing negligence, and also evidence which authorized the court to submit the doctrine of last clear chance. It appears that the case was fairly tried, that the instructions of the court, while not perfect, yet taken as a whole, state the law fairly and impartially, and it is impossible for us, after a careful, painstaking, and earnest consideration of the record, and the briefs filed in this court, to say that there is substantial error which requires a reversal.

Since we have decided that the recovery on the part of the plaintiff was proper, and that the general finding of liability must be affirmed, it is proper to consider the contention of the defendant that the verdict of the jury was excessive. The verdict was in the sum of $16,500. The plaintiff was 51 years of age when the accident occurred in 1915, and he is now 59 years of age. He has gone through various operations with doubtful success, and it is a matter of speculation as to whether further operations will be beneficial. There is testimony to the effect that it would have been better for plaintiff if his arm had been amputated, that the bones grate together when he swings his arm, that he suffered an enormous amount of pain, and still suffers pain. The evidence was that plaintiff has been subjected to bone grafting, and that that process has failed. In addition to a broken right arm and a dislocated shoulder, he suffered an injured ear-drum and an impairment of his hearing.

Plaintiff's business was that of fire insurance and buying cotton seed. Prior to the accident his average earnings were $150 per month. It appeared at the time of the trial that he had been so incapacitated by his injury that he had not been able to earn over $800 in five years. Under all of the circumstances of the case, the jury were justified in fixing his compensation at the amount of the verdict.

The injury occurred eight years ago and it must be said that the plaintiff's injuries are permanent. We think, therefore, that this is a case where, under the facts as found by the jury, the defendant's negligence caused a most appalling injury to an elderly man, leaving him with serious permanent injuries after a lapse of a period of eight years. This case cannot be measured by a comparison with cases in which there was merely the loss of limb. We must consider the situation as it is. A mangled and useless arm which still causes pain and suffering, and a badly damaged ear which impairs the plaintiff's hearing, justify a verdict in the sum found, purely as compensation for permanent injuries, pain and suffering, and impaired earning capacity.

It is not clear to us that the verdict in any respect exceeds the amount which might well have been given by a court trying the cause without a jury, after a most mature consideration, free entirely from all elements of passion, prejudice, and sympathy.

No good reason appears which requires a remittitur. The verdict in its present amount is sustained.

There is no error in the record, and the judgment of the trial court is affirmed.

By the Court: It is so ordered.